**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CHARLES WILLIAMS,<br><br>Petitioner,<br><br>v.<br><br>JOANN LYNDS,<br><br>Respondent. | ) | No. 1:25-cv-13701-JEK |

**MEMORANDUM AND ORDER ON RESPONDENT'S MOTION TO DISMISS**

**KOBICK, J.**

*Pro se* petitioner Charles Williams was convicted of second-degree murder and multiple firearms offenses in Suffolk Superior Court in September 2021. After his conviction was affirmed by the Massachusetts Appeals Court and the Massachusetts Supreme Judicial Court ("SJC") denied his application for further appellate review, Williams filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court. His petition asserts that he was deprived of a full and fair opportunity to litigate his motion to suppress in the state court proceedings and that his trial attorney provided ineffective assistance of counsel. Respondent Joann Lynds, the Superintendent of Massachusetts Correctional Institution Shirley, has moved to dismiss Williams' petition, arguing that Williams failed to exhaust his state court remedies and that a stay of this matter is unwarranted.

Lynds' motion will be granted. Williams has not exhausted state remedies by pressing his claims of ineffective assistance of counsel and denial of the opportunity to litigate his motion to suppress in the state courts. And to the extent that Williams challenges the denial of his motion to suppress as contrary to Supreme Court precedent, that claim is foreclosed by the Supreme Court's

decision in *Stone v. Powell*, 428 U.S. 465 (1976). Nor is a stay of this petition pending exhaustion of state court remedies warranted, because Williams' unexhausted claims lack potential merit.

**BACKGROUND**

Williams was indicted in Suffolk Superior Court for murder and various firearms offenses in November 2017. ECF 19-1, at 4, 8; *see Commonwealth v. Williams*, 104 Mass. App. Ct. 498, 499 & n.1, *review denied*, 495 Mass. 1103 (2024). Through counsel, Williams filed four motions to suppress certain evidence. *See* ECF 19-1, at 14, 116-17 (describing motions). As pertinent here, one of those motions sought to suppress a gun found when police officers searched a backpack left in Williams' car following his arrest. *See id.*; *Williams*, 104 Mass. App. Ct. at 501-07. After a two-day evidentiary hearing, the Superior Court denied Williams' motions to suppress. ECF 19-1, at 16-17, 117, 168-201. Williams then sought and was denied leave to file an interlocutory appeal of the Superior Court's decision. *Id.* at 18; *see* Mass. R. Crim. P. 15(a)(2). Upon the conclusion of trial in September 2021, a jury convicted Williams of second-degree murder and the various firearms offenses, and a judge sentenced him to a term of fifteen years to life in prison for the murder conviction and to shorter concurrent sentences for the firearms convictions. ECF 1, at 3, ¶¶ 1-5; ECF 19-1, at 40-42, 48; *Williams*, 104 Mass. App. Ct. at 501.

Represented by different counsel, Williams appealed his convictions to the Appeals Court, arguing that (1) his motion to suppress the backpack and gun under the Fourth Amendment should have been granted; (2) the prosecution's peremptory challenges violated his equal protection rights; and (3) the Superior Court improperly allowed the prosecution to use video surveillance evidence to lead a witness during his testimony. ECF 1, at 4, ¶ 9(f); ECF 19-1, at 59, 74-75; *Williams*, 104 Mass. App. Ct. at 501, 507, 508. The Appeals Court rejected all three arguments and affirmed Williams' convictions in August 2024. *Williams*, 104 Mass. App. Ct. at 501-09.

With the same appellate counsel, Williams filed an application for leave to obtain further appellate review from the SJC. ECF 1, at 4, ¶ 9(g). That application sought review of the Superior Court's (1) denial of Williams' motion to suppress the backpack and gun, and (2) allowance of the prosecution's use of video surveillance to lead its witness. ECF 19-1, at 131. The SJC denied that application on December 13, 2024. ECF 1, at 4, ¶ 9(g); ECF 19-1, at 53. Since that time, Williams has not filed any further motions or petitions concerning his convictions in state court. ECF 1, at 5, ¶ 10, & at 8 (Ground One), 9 (Ground Two).

On December 5, 2025, Williams filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court. ECF 1. His petition asserts that (1) he was deprived of his Sixth Amendment right to the effective assistance of counsel because his trial counsel "fail[ed] to argue new legal standards in the suppression motion," and (2) the Massachusetts courts violated the Fourth Amendment in denying his motion to suppress the gun and backpack, and deprived him of due process by failing to afford him a "full and fair opportunity to litigate his suppression motion." ECF 1, at 7-9 (formatting and capitalizations altered). Lynds moved to dismiss the petition, contending that Williams has not exhausted his claims and that this Court is foreclosed from reviewing the merits of his Fourth Amendment claim. ECF 18. In opposing that motion, Williams asks the Court to stay his petition if it concludes that any of his claims are not exhausted, so that he may may pursue postconviction relief in state court without losing access to federal habeas review. *See* ECF 25.[1] In the alternative, he seeks leave to amend his petition. ECF 27. Lynds

[1] Williams also suggests that the Court could dismiss his petition without prejudice. *See* ECF 25, at 2. But as he acknowledges, such a dismissal would likely foreclose any future federal habeas petition because of the one-year statute of limitations for such petitions. *See* 28 U.S.C. § 2244(d)(1). Where, as here, a petitioner was denied further appellate review by the SJC and did not seek certiorari in the Supreme Court, "the statute of limitations begins to run when the time for seeking review by writ of certiorari in the United States Supreme Court has expired." *White v. Gelb*, No. 12-cv-11178-FDS, 2012 WL 6586506, at *2 (D. Mass. Dec. 14, 2012). The SJC denied

opposes those requests, arguing that Williams has not fulfilled the requirements for a stay and that amendment would be futile. *See* ECF 26.

**DISCUSSION**

Under the Antiterrorism and Effective Death Penalty Act of 1996, this Court may grant the habeas petition of an individual held in custody pursuant to the judgment of a state court only in limited circumstances. The statute provides that a petition "shall not be granted" unless it appears that the petitioner "has exhausted the remedies available in the courts of the State," or "there is an absence of available State corrective process" or "circumstances exist to render such process ineffective to protect the rights of the [petitioner]." 28 U.S.C. § 2254(b)(1). If the petitioner satisfies that threshold requirement, the Court may grant the petition if the state court adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). A habeas petition submitted *pro se* must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

Williams' application for further appellate review on December 13, 2024. ECF 19-1, at 53. Williams had 90 days, until March 13, 2025, to petition the Supreme Court for a writ of certiorari. Sup. Ct. R. 13(1). The limitations period began that day and expired one year later, on March 13, 2026. Thus, although Williams' habeas petition was timely filed in this Court on December 5, 2025, he is now beyond the limitations period and is unlikely to be able to file a new federal habeas petition if this petition is dismissed without prejudice. *See Rhines v. Weber*, 544 U.S. 269, 275-76 (2005) ("Although the limitations period is tolled during the pendency of a properly filed application for State post-conviction or other collateral review, the filing of a petition for habeas corpus in federal court does not toll the statute of limitations." (quotation marks and internal citations omitted)); 28 U.S.C. § 2244(d)(2).

**I. Ineffective Assistance of Counsel Claim.**

Williams' petition first claims that his Sixth Amendment right to the effective assistance of counsel was violated because his trial counsel "fail[ed] to argue new legal standards in the suppression motion" that, if presented, "likely" would have resulted in the exclusion of evidence "central" to his conviction. ECF 1, at 7-9 (formatting and capitalization altered); *see* ECF 2, at 8-10. Lynds contends that Williams has failed to exhaust this claim in the state court, either on direct appeal or through a motion for a new trial under Massachusetts Rule of Criminal Procedure 30. A Rule 30 motion is the "exclusive vehicle for postconviction relief" in the Massachusetts state courts once a defendant's direct appeal has concluded, *Leaster v. Commonwealth*, 385 Mass. 547, 549 (1982), and it is the "preferred method" for claiming ineffective assistance of counsel in the state courts, *Commonwealth v. Zinser*, 446 Mass. 807, 810 (2006).

Federal courts may not adjudicate unexhausted claims asserted in petitions under 28 U.S.C. § 2254. *Rhines v. Weber*, 544 U.S. 269, 273-74 (2005). Williams acknowledges that he has not sought review of his ineffective assistance of counsel claim through a Rule 30 motion or on direct appeal, and he does not contend that there is "an absence of available State corrective process" or that the state processes available to him would be ineffective to protect his rights. 28 U.S.C. § 2254(b)(1)(B); *see* ECF 25, at 1 (stating that "[t]he ineffective assistance of counsel claim is new"); ECF 1, at 7-8 (representing that he "did not exhaust [his] state remedies on Ground One"). Accordingly, Williams has failed to exhaust state court remedies, and his Sixth Amendment claim is subject to dismissal.

**II. Fourth and Fourteenth Amendment Claims.**

Williams next claims that the Superior Court misapplied the Fourth Amendment in denying his motion to suppress the backpack and gun, and that, in violation of his Fourteenth Amendment

due process rights, he was denied a full and fair opportunity to litigate his Fourth Amendment claim in the state court.

With respect to the denial of his motion to suppress, Williams contends that the Superior Court misapplied the Supreme Court's Fourth Amendment precedent and that its factual findings "were not supported by the record and ignored defense evidence demonstrating [a] lack of probable cause." ECF 2, at 11-12. Williams' disagreement with the Superior Court's denial of his motion to suppress runs headlong into the long-settled precedent, tracing to the Supreme Court's decision in *Stone v. Powell*, that "a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims." *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001). *Stone* held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481-82. "So long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims" by means of "procedures suitably crafted to test for possible Fourth Amendment violations," "a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those claims." *Sanna*, 265 F.3d at 9. Thus, to the extent that Williams contends that the Superior Court erred in denying his motion to suppress, and that the Appeals Court erred in affirming that ruling, this Court is foreclosed from reviewing his claim and it must be dismissed.

Williams argues, in the alternative, that the exception articulated in *Stone* applies in this case, because he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim, and the denial of that opportunity deprived him of his Fourteenth Amendment due process rights. Lynds contends, and the Court agrees, that this claim has not been exhausted. Willaims

challenged the denial of his motion to suppress in his direct appeal to the Appeals Court, but he did not argue that the trial court proceedings deprived him of a full and fair opportunity to litigate his Fourth Amendment claim. *See Williams*, 104 Mass. App. Ct. at 501-07. Nor did he raise that argument in his application for further appellate review before the SJC. ECF 19-1, at 131-39. And as Williams acknowledges, he has not sought postconviction relief in the state courts by filing a Rule 30 motion. "To achieve exhaustion, a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." *Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011) (quotation marks omitted). Williams has not met that burden here. Accordingly, his attempt to invoke the exception outlined in *Stone*, which he frames as a due process claim, must be dismissed for lack of exhaustion.

## III. Stay and Abeyance.

Williams alternatively contends that, to the extent that his claims are not exhausted, the Court should stay and hold in abeyance his habeas petition while he exhausts those claims in state court. ECF 25, at 2. Noting that petitioners whose petitions are dismissed by federal courts "for want of exhaustion might . . . find themselves without adequate time to exhaust their state-court remedies and still return within the limitations period to federal court," the Supreme Court has approved the use of a "stay-and-abeyance procedure." *Sena v. Kenneway*, 997 F.3d 378, 384 (1st Cir. 2021). Under this procedure, a district court may "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines*, 544 U.S. at 275-76. But this procedure is "available only in limited circumstances," where (1) the petitioner "had good cause for his failure to exhaust"; (2) "his unexhausted claims are potentially meritorious"; and (3) "there is no indication that [he] engaged in intentionally dilatory litigation tactics." *Id.* at 278.

Lynds argues that Williams has not demonstrated good cause for his failure to exhaust, nor has he demonstrated that his unexhausted claims are potentially meritorious. Bypassing the former argument, the Court agrees that Williams' unexhausted claims are not likely to be meritorious and therefore do not justify a stay. To succeed on his Sixth Amendment claim, Williams must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) the deficiency in performance caused him prejudice. *Feliciano-Rodríguez v. United States*, 986 F.3d 30, 36 (1st Cir. 2021); *see Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984). As to the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Feliciano-Rodríguez*, 986 F.3d at 37 (quotation marks omitted). An attorney's performance will be deemed deficient "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (quotation marks omitted). To demonstrate prejudice, Williams must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Feliciano-Rodríguez*, 986 F.3d at 37 (quotation marks omitted).

Williams contends that his trial counsel's performance was deficient in two ways. He first argues that his trial counsel "fail[ed] to invoke" *Commonwealth v. Mubdi*, 456 Mass. 385 (2010), a case he asserts "established heightened requirements for evaluating the legality of [searches and] seizures, including the level of reasonable suspicion necessary to justify investigatory detentions and the permissible scope of police conduct during such encounters." ECF 2, at 5, 8. In Williams' view, had his counsel mentioned *Mubdi*, the Superior Court would have suppressed the backpack and gun, "and there is a reasonable probability that the verdict would have been different." *Id.* at

8. Even if his counsel's failure to cite a case could constitute deficient performance, Williams misreads *Mubdi*. Rather than set forth a heightened requirement for warrantless searches and seizures, *Mubdi* reiterates the settled requirement that an "investigatory stop [must be] justified by reasonable suspicion, based on specific and articulable facts, that the defendant had committed, was committing, or was about to commit a crime." *Mubdi*, 456 Mass. at 395 (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In contrast to an investigatory stop, a warrantless arrest requires "that the detaining officer have probable cause to believe that a crime has been committed." *United States v. Rasberry*, 882 F.3d 241, 246-47 (1st Cir. 2018). In his case, Williams was arrested based on probable cause that he had committed the murder. *See Williams*, 104 Mass. App. Ct. at 504; ECF 19-1, at 193 (Superior Court noting that "the record more than amply supports probable cause to arrest Williams"). And the Massachusetts courts likewise determined that there was probable cause to search the backpack. *See Williams*, 104 Mass. App. Ct. at 504. Consequently, there is no merit to Williams' argument that his counsel's decision not to invoke *Mubdi*—a case addressing the lowered standard for investigatory stops—"was so patently unreasonable that no competent attorney would have made it," nor that it affected the outcome of the motion to suppress and trial. *Feliciano-Rodríguez*, 986 F.3d at 37 (quotation marks omitted).

Williams also asserts that his trial counsel erred by "fail[ing] to invoke" *Commonwealth v. Gentile*, 437 Mass. 569 (2002), a case that, in his words, "reaffirmed that the Commonwealth bears the burden to prove that a warrantless search falls within a narrowly drawn exception." ECF 2, at 8. Whether or not his counsel cited *Gentile*, the Superior Court plainly understood that it was the Commonwealth's burden to justify the warrantless search of Williams' backpack. The Superior Court specifically found that the Commonwealth had "sustain[ed] its burden for discovery of the gun." ECF 19-1, at 193. Thus, whether or not Williams' counsel articulated the burden of proof in

the motion to suppress, any failure to cite *Gentile* did not cause Williams prejudice. Williams has not, accordingly, established that his ineffective assistance of counsel claim is "potentially meritorious." *Rhines*, 544 U.S. at 278.

Williams has also not demonstrated potential merit in his claim that he was denied a full and fair opportunity to litigate his Fourth Amendment claim. Williams contends that his state court proceedings "lacked the procedural fairness necessary for constitutional adjudication," ECF 2, at 11, but he identifies no issue with "the adequacy [or] fairness" of the procedures made available to him, *Sanna*, 265 F.3d at 8-9. And the record is clear that Williams had a full and fair opportunity to litigate his Fourth Amendment challenge to the introduction of the backpack and gun at trial. Represented by counsel, Williams filed a motion to suppress the backpack and gun. The Superior Court held a two-day evidentiary hearing before denying the motion. *Williams*, 104 Mass. App. Ct. at 501; ECF 19-1, at 16-17. Williams then sought and was denied interlocutory review of that decision before a Single Justice of the SJC. ECF 19-1, at 18. After his trial, Williams, represented by counsel, appealed his convictions to the Appeals Court, arguing that the Superior Court erroneously denied his motion to suppress the backpack and its contents. That Court affirmed his convictions and the Superior Court's denial of the motion to suppress in a fulsome and published opinion. *Williams*, 104 Mass. App. Ct. at 501-07. Williams and his counsel then applied for further appellate review with the SJC, which denied that application. ECF 1, at 4, ¶ 9(g); ECF 19-1, at 53, 115-43. "Faced with this obviously adequate procedural framework," Williams' claimed denial of a full and fair opportunity to litigate his Fourth Amendment claim has no potential merit. *Sanna*, 265 F.3d at 8.

Accordingly, the Court must deny Williams' request to stay this case pending any postconviction proceedings in state court concerning his unexhausted claims. And as Williams has

not identified any exhausted claims that could replace his unexhausted claims in an amended habeas petition, his request for leave to amend must be denied as well. *See Todisco v. Verizon Commc'ns, Inc.*, 497 F.3d 95, 98 (1st Cir. 2007) ("Futility of the amendment constitutes an adequate reason to deny the motion to amend.").

**CONCLUSION AND ORDER**

For the foregoing reasons, Lynds' motion to dismiss, ECF 18, is GRANTED. Williams' petition for a writ of habeas corpus, ECF 1, and his motion for leave to amend, ECF 27, are DENIED. The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c). The Clerk shall enter an order of dismissal.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: September 8, 2026